HULDA LANCE, Appellant, v. D. C. VAN WINKLE and S. S. KRESGE COMPANY, a Corporation, Respondents.—No. 40662.—213 S. W. (2d) 401.

Division One, September 13, 1948.

*Frank X. Cleary* and *Harry M. James* for appellant; Orville *Richardson* of counsel.

144

146

*Wayne Ely* and *Robert C. Ely* for respondents.

[402] DOUGLAS, P. J.—Plaintiff recovered a judgment for $15,-000 for injuries she received when she slipped and fell on the step of the entrance vestibule of the Kresge store at 517 St. Charles Street in St. Louis. Defendant Van Winkle managed the store for the owner, defendant Kresge Company.

Plaintiff was leaving the store about noon by way of the St. Charles Street entrance which has a vestibule several feet long leading to the sidewalk. The floor of the vestibule is six inches above the level of the sidewalk. Walking through the vestibule she glanced in the show windows. She slipped on the step leading down to the sidewalk and fell. She raised up and saw that she had stepped on some ice cream and cone which had caused her to slip.

After judgment was rendered on the verdict for plaintiff, defendants filed a motion to set aside the verdict and judgment, and for a new judgment in their favor. Sec. 113 New Civil Code, Sec. 847.113 Mo. RSA. The motion was sustained on the ground the evidence showed no negligence on the part of defendants. The court found they had neither actual nor constructive notice of the presence of the ice cream and cone on the step of the vestibule. Accordingly, the court set aside the verdict and judgment for plaintiff and entered a new judgment for defendants. Plaintiff has appealed.

The main question for decision on appeal is whether the evidence shows the ice cream and cone were on the step of the vestibule for a sufficient length of time to charge defendants with constructive notice of its presence.

The rule is well settled that a customer who is injured by slipping upon some foreign substance at a store has the burden of producing evidence showing the presence of the foreign substance for a sufficient length of time to give notice of its presence to the storekeeper. After such notice the failure of the storekeeper to remove it constitutes negligence. See State ex rel. v. Bland, 357 Mo. 339, 208 S. W. (2d) 263.

In this case the only evidence tending to prove the length of time the ice cream and cone were present on the step was the testimony that the ice cream appeared to have dried. In this situation we will review the evidence as to the appearance of the ice cream. All of this evidence came from the plaintiff herself. She was the only witness who saw the ice cream and cone, defendants' witnesses all testifying there was no foreign matter whatever on the step or in the vestibule.

Plaintiff's testimony was as follows: "I walked on out, stepped out and slipped off of that step, slipped on that ice cream and cone . . . . I fell back on the step." She said she saw some ice cream on the heel of her shoe after she slipped and there was still some of the ice cream on her coat at the time of the trial. As she "kind of got up" she looked around and saw on the step the ice cream and cone "kind of crushed like, you know, like part of a cone crushed and the cream." Particularly describing the ice cream she said it was "kind of dry, like ice cream would be, you know . . . [403] dry like, it looked like dried cream. . . . It was kind of dried there on the step." Answering a question as to how big a place the ice cream covered, she said, "Well, it was about, I guess, half as big as my hand. . . . It was kind of dried there on the step." The cone "was crushed, you know, with the cream." It "was just dry like, you know, like, you know, ice cream after it is dry." Describing its color, she said, "Kind of—you know what ice cream looks like after it is dried—kind of brownish. Kind of brown-yellow like. . . . Kind of gummy, yes. The cone was mashed in with it. You couldn't tell much about it. I couldn't. . . . It was pretty dry. I thought it was ice cream because it was sticky and pasty." She could not say that the cone mashed up in the ice cream had made the ice cream dry, but the cone was mashed up and powdered and mixed in with the ice cream. She said some of the substance "had dried" on her shoes, on her dress, and on her coat.

Plaintiff testified she did not know how the ice cream got on the step or how long it had been there. After her fall she could not

walk so she sat on the step awaiting the arrival of the ambulance. There was testimony from two witnesses that only a few minutes before the accident they saw nothing on the floor of the vestibule or on the step, and from several witnesses that there was no ice cream on the step after plaintiff was taken away in the ambulance. But in considering whether plaintiff's evidence proved notice we must disregard such evidence and consider only that favorable to plaintiff, with all its reasonable inferences, in support of her verdict. Even so we do not find plaintiff's evidence of sufficient certainty to establish constructive notice. It is merely speculative.

Plaintiff argues that the ice cream had been on the step for some time because it was "kind of dry, dry like, sticky and pasty, gummy." But that does not avoid the reasonable inference it could have been deposited in the step in that very condition. Or if it had been deposited when fresh, thereafter plaintiff had stepped in it, slipped on it, and fell on it as indicated by the spots which had dried on her coat and dress. So that could reasonably account for its appearing to be kind of dry. When she stepped and fell on it she could have mashed the cone into the ice cream. The powdered, mashed crust of the cone mixed with the ice cream also could have made the ice cream appear to be dry. After falling on it there was a spot only as large as half her hand. So it is reasonable to infer there could not have been much ice cream left in the cone when it was deposited on the step. A small amount, mixed with the crushed cone, and blotted by her coat could give the ice cream a kind of dry appearance. So we have a number of factors that could have caused or contributed to the dry appearance of the ice cream other than mere exposure to the warm air while laying on the step over a period of time. The temperature at the time she fell was 77 degrees. It was a clear, dry, sunny day.

We had a somewhat similar situation in State ex rel. Trading Post Co. v. Shain, 342 Mo. 558, 116 S. W. (2d) 99. In that case plaintiff slipped upon lettuce leaves and a celery stalk on the floor of a grocery store. After plaintiff's fall this vegetable matter was found to be in a bruised and darkened condition. It was contended such a condition could have been caused by customers walking on it over a period of time. But we found contrary inferences could just as well be drawn in that it may have been in such condition when it was dropped on the floor, or that plaintiff's stepping and slipping on it caused such condition. So we said such evidence left the question of the length of time the vegetable matter was on the floor a matter of speculation and conjecture.

To avoid a similar objection in the instant case plaintiff introduced evidence by an expert chemist to show the length of time it would take ice cream to form a crust. The witness described an experiment in which he had placed a half pint of vanilla ice cream

on a slab of marble similar to the marble of the step. He spread the ice cream over three square inches, a quarter of an inch thick. He placed it in the sun, unprotected from the breeze, and at approximately the same temperature as of the day of the accident. It [404] took between one and threequarters to two hours for the ice cream to form a crust over the top. The ice cream did not change color but remained white.

Defendants contended this evidence was inadmissible but the court admitted it. Later, however, at the time it sustained defendants' motion to set aside the verdict and judgment the court declared such evidence was of no substantial worth or value.

For evidence of an experiment made out of court to be proper, it must be shown that the experiment was made under conditions and circumstances substantially similar to those existing at the time of the occurrence in question. So long as conditions are substantially or essentially similar, the fact they are not exactly the same is a matter of the weight to be given to such evidence by the jury. See Carpenter v. Kurn, 348 Mo. 1132, 157 S. W. (2d) 213; Lynch v. M.-K.-T. R. Co., 333 Mo. 89, 61 S. W. (2d) 918; James v. Bailey Reynolds Chandelier Co., 325 Mo. 1054, 30 S. W. (2d) 118.

The trial court was correct in declaring the evidence of the experiment was improper. It reached this conclusion for the reason the experiment was made under different and dissimilar conditions from those described by the plaintiff as existing when she slipped and fell. This appears to be obvious from the evidence. Besides factors of dissimilarity there was no showing the ice cream used in the experiment was of the same ingredients or similar ones. Under such circumstances we hold the evidence of the experiment was not admissible.

But granting that the evidence of the experiment could be deemed proper, still it is not sufficient proof that the ice cream on which plaintiff slipped had been on the store step for the length of time indicated by the experiment. Such evidence does not show the ice cream, even though it was kind of dry, *could not* have been on the step for shorter period than the one indicated by the experiment, so short that it could not constitute constructive notice. So even with the evidence of the experiment, the length of time the ice cream and cone were on the step is still only speculative and uncertain.

Thus it is clear that plaintiff has not sustained the burden of affirmatively showing the length of time the unsafe condition had existed. The evidence leaves that factor which is vital to plaintiff's case wholly to conjecture. Therefore plaintiff may not recover on the ground of constructive notice.

Plaintiff argues that defendants are charged with actual notice of the presence of the ice cream and cone. Defendants' porter, whose duty it was to inspect and clean the vestibule, had passed through it only a few minutes before the accident. He testified that

he had looked but had seen no foreign matter. Therefore, says plaintiff, he is charged with actual notice of that which would be revealed by looking. But that conclusion could follow only where the physical facts show an object was actually present subject to view. Such is not the situation here. The physical facts do show the store had a vestibule, and there was a step from the vestibule to the sidewalk, but the physical facts do not show the presence of any foreign matter on the step. This is the basic issue of fact in the case. There is only an assertion by plaintiff that there was such matter on the step. This assertion is contradicted by all of defendants' witnesses. Nor is this a case where looking is deemed to be circumstantial evidence of seeing such as we discussed in Hilton v. Terminal R. Assn. of St. Louis, 345 Mo. 987, 137 S. W. (2d) 520. Certainly, from the facts of the instant case there was no evidence of actual notice.

Finally, plaintiff argues the trial court should have given her a new trial rather than entering judgment against her. Such being the case, she contends this court should now remand the case for a new trial.

On a number of occasions appellate courts have remanded a case for new trial where it reversed a judgment for plaintiff. It is a settled practice of appellate procedure that a case should not be reversed for failure of proof without remanding, unless the [405] record indicates that the available essential evidence has been fully presented, and that no recovery could be had in any event. Byrne v. Prudential Ins. Co. of America (Mo. Sup.), 88 S. W. (2d) 344. This rule is pertinent where the record indicates that other and additional evidence might be adduced in support of plaintiff's action and enable him to make a submissible case. See State ex rel. Scullin v. Robertson (Mo.), 187 S. W. 34. But there is nothing whatever in the record to show that we have that situation here. In the first place we are not reversing the judgment below, we are affirming it. Furthermore, the record does not show there is other or additional evidence available. On the contrary it shows all the facts were as fully developed as plaintiff was able to do. In fact the trial court, in its ruling on defendants' motion to set aside the verdict and judgment, indicated that besides the improper evidence about the experiment the evidence of record was "otherwise unsatisfactory as a basis for judgment." Consequently, nothing appears in the record before us to warrant or support an order remanding the case for a new trial.

The judgment is *affirmed*. All concur.